[No. 8439. Department Two. March 25, 1910.]

GROVER WIEMANN, *Respondent*, v. JACKMAN RAILWAY COMPANY *et al.*, *Appellants.*[1]

MASTER AND SERVANT—NEGLIGENCE OF MASTER—QUESTION FOR JURY. The negligence of the defendants in sending a roller coaster car up an incline while an employee was working on the track, is for the jury, where there was evidence tending to show that the plaintiff was set to work there by the manager, who promised to take care of him while at work, but sent up a car contrary to custom, which was a very dangerous proceeding.

SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. An employee knocked from a roller coaster track by a car is not guilty of negligence contributing to his injury, by reason of having taken a position with his back to the car, when he could not have seen the car in time to have escaped the injury if he had been facing it.

SAME. In an action for injuries to an employee working upon a roller coaster track by being struck by a car, evidence that the attachment of a car to the chain would have given notice to one working on the chain does not show contributory negligence in not heeding the notice, where it does not appear that plaintiff had commenced work on the chain when the car was attached.

SAME—PROXIMATE CAUSE. Upon the question of the contributory negligence of an employee knocked from a roller coaster track by a car, it is immaterial that he exposed himself to the danger of having his clothes caught on the chain, that not being the cause of the injury.

TRIAL—INSTRUCTIONS—ISSUES—HARMLESS ERROR. A technically erroneous instruction purporting to state the issues, and alluding to the plaintiff's expectancy of life as if alleged in the complaint (which only alleged his age), does not require a reversal where it did not state what the life expectancy actually was.

TRIAL—INSTRUCTIONS—EVIDENCE—BURDEN OF PROOF. Where there are correct general instructions as to the burden of proof and the preponderance of the evidence, it is not error to precede other instructions by the introductory clause, "If you find from the evidence" and so-forth, without repeating the previous general instructions.

MASTER AND SERVANT—CUSTOMARY ACTS—INSTRUCTIONS. It is not error to give an instruction as to the custom of not sending up a roller coaster car while a man was at work on the track, where sev-

[1]Reported in 107 Pac. 844.

eral witnesses who had worked there testified that they never had known it to be done, especially in view of the evident danger in doing so.

APPEAL—REQUISITES—EXCEPTIONS. Error cannot be predicated upon rulings of the trial court to which no exceptions were taken.

Appeal from a judgment of the superior court for King county, Gay, J., entered July 6, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries. Affirmed.

*Walter B. Beals* and *Morris, Southard & Shipley*, for appellants.

*James Kiefer* and *L. A. Michelson*, for respondent.

PARKER, J.—This is an action to recover damages on account of personal injuries, alleged to have been received by the plaintiff as the result of the negligence of the defendants, who are owner and manager respectively of a roller coaster railway at an amusement resort in Seattle. The device consists of a track maintained at different elevations along its course upon which small cars are run to carry passengers. The structure is about fifty feet above the ground at its highest point. The cars are elevated to this point by an endless chain along an incline portion of the track, which incline is about 150 feet long. The cars then continue their course by force of gravity along the further course of the track, which is varied by numerous curves and different grades to the starting place at the foot of the incline. The chain revolves over a sprocket wheel just beyond the highest point of the incline, where the cars are automatically released from the chain to continue their course by force of gravity, the chain revolving back under the structure where the power is applied to it. The chain runs in a box or trough up the incline over the highest point to the sprocket, in the middle of the track and on the same level. The upper sprocket wheel revolves upon a shaft supported at the ends by two timbers running lengthwise between the chain trough

and track about 15 inches below the track. The ends of this shaft are held in place by set screws so as to adjust the position of the sprocket and keep the chain at proper tension. The set screws extend from the ends of the sprocket shaft back between the tracks and the chain trough, but about a foot lower. If a man were at work adjusting the set screws he could not see a car coming up the incline until it was very near the summit and within a short distance of him. In adjusting the set screws one has to stand on the framework and timbers of the structure, there being no floor to work upon.

On July 11, 1908, the plaintiff, then in the employ of the company, was directed by its manager, Carpenter, to go to the upper sprocket wheel and tighten the chain by means of the set screws, and while doing so he fell from there to the ground and received the injuries for which he seeks recovery. There is no dispute as to the foregoing facts. It is charged against the defendants that they negligently caused a car to be sent up the incline while plaintiff was at work tightening the chain, knowing he was there, and that if a car was then sent up the plaintiff must inevitably be struck by the car and thrown from the structure to the ground. That he was so struck by the car and thrown to the ground, receiving the injuries for which he claims damages. Defendants deny negligence upon their part, and allege that plaintiff's injuries were caused by his own fault and want of care. A trial before the court and a jury resulted in a verdict in plaintiff's favor. Defendants moved for a new trial which was denied, and judgment was entered accordingly, from which they have appealed.

It is first contended that the evidence of appellants' negligence was not sufficient to support the verdict, and that the evidence shows respondent's injuries were the result of his own contributory negligence. Appellants contentions upon this branch of the case seem to be based upon two theories: (1) that no car was sent up the incline while plaintiff was tightening the chain; and (2) that respondent, but for his

own negligent manner of doing the work and want of care, could have extricated himself and gotten out of the way of any such car had it been sent up while he was there. We will notice these in order.

There was testimony tending to show that Carpenter directed respondent to go up and tighten the chain while it was running; that respondent got on the rear end of one of the cars and rode up the incline, stepping off at the summit and proceeded to his work; that Carpenter saw him go up; that Carpenter then had charge of the starting of the cars, and very soon thereafter sent up another car; that respondent was struck by this car and thrown from the structure, falling through the framework to the ground; that a man while at work tightening the chain, even if he were looking in the direction of an approaching car, could not see it until within thirty feet of him; that the car would travel that distance in about four seconds, it being admitted that the car would travel up the whole length of the incline in 24 seconds; that it was not the practice to send cars up while a man was there tightening the chain, and that it would be very dangerous to do so. Respondent testified that just before he went up Carpenter said to him, "I will take care of you while you are up there." There was sharp conflict in the testimony touching these facts, but we think the evidence was sufficient to present a question of fact for the jury to determine as to the appellants' negligence, and unless we can determine as a matter of law that appellants were relieved from liability by respondent's contributory negligence, we cannot disturb the verdict and judgment.

In view of the facts, which must have been believed by the jury as showing appellants' negligence, it is not easy to see how respondent could, by any lack of attention to the car, contribute to his own injury so as to relieve appellants from liability. The theory of appellants is that there is a safe manner of doing the work, while respondent chose an unsafe manner of doing it. It was admitted by respondent that in

turning the set screws he stood astride the chain trough, which is twelve inches wide, with his feet on the framework some fifteen inches below, and that he reached down with his wrench to the set screws, first on one side of the chain trough and then on the other, thus placing his back to the approaching car; hence, he did not see it until it was practically upon him; and it seems the noise of the machinery prevented his hearing it. There is evidence tending to show that he could have stood facing the chain with his side to the approaching car, first on one side of the chain and then on the other, in which position it is contended he could have seen the approaching car in time to extricate himself. This, it is urged, was the safe manner of doing the work. We think the evidence was such that the jury might well believe that even had he proceeded to the tightening of the chain in this manner, still he would not in his necessarily stooping position with his attention upon his work be likely to see an approaching car in time to enable him to safely get out of its way. Considering the evidence as to the short distance from where he was at work to where the car could be first seen, and the very short time it would take the car to traverse that distance, the jury were justified in believing that he was in a very dangerous position even if he actually saw the car at the farthest point it could be seen from him.

There was some evidence tending to show that when a car was attached to the chain at the foot of the incline it caused a jerk upon the chain which would be noticed at the point where respondent started to work, from which it was argued that, had he been exercising due caution, such jerk would have furnished him warning that a car was coming up the incline. The evidence as to this effect upon the chain by the attaching of a car thereto, especially the effect upon the chain at the upper sprocket, we think was not so convincing that the jury were bound to believe that it would have furnished such warning to respondent as is claimed; besides, it does not appear that respondent had actually reached the

set screws and commenced his work before the starting of the car which is claimed to have struck him. The evidence indicates that he was struck almost immediately after commencing his work. The jury might have believed that whatever jerk was caused by the attaching of the car to the chain in this instance occurred before respondent had an opportunity of noticing it. This we think was a question of fact for the jury, and we cannot say, as a matter of law, that respondent was guilty of contributory negligence.

There was evidence tending to show that one of the dangers incident to standing astride of the chain trough and reaching down to the set screws was the possibility of a person so doing having his clothing caught on the dogs of the running chain. Counsel argued that this evidence was so conclusive that the court could, as a matter of law, say defendant chose a dangerous way of doing the work when a safe way was available to him. Since the jury must have found that respondent's injury did not result from this danger, it becomes immaterial whether respondent carelessly exposed himself to it or not.

While the trial judge was defining the issues, at the beginning of his instructions to the jury, he stated: "He (plaintiff) alleges that before this accident, he was able to earn and could earn $4 per day as a compensation; that he was twenty-four years of age at the time of this accident and thereby in law would have an expectancy of life of thirty-nine years." This statement to the jury is claimed to be erroneous and prejudicial, since there was no allegation in the complaint as to what respondent's expectancy of life was, nor was there any evidence introduced so showing. It will be noticed that this instruction was only purporting to state what the issues were, although counsel argues to some extent as though it was an instruction binding upon the jury as to what the life expectancy of the plaintiff actually was. We think it clear that it is not subject to that objection. It was, however, technically erroneous as to respondent's alleging that he

had "An expectancy of life of thirty-nine years." No further reference to respondent's expectancy was made in the instructions. We are of the opinion that this technical error is not sufficient to require reversal of the judgment.

In certain instructions given by the court, touching certain facts which there was evidence tending to show, the court commenced one with the expression, "If you find from the evidence that the defendant Carpenter" etc., and commenced another with the expression, "Further, Gentlemen, should you believe from all the evidence that the defendant Carpenter" etc. It is contended that each of these instructions is a misstatement of the law and in violation of the rule requiring all material facts to be established by the person upon whom the burden rests, by a fair preponderance of evidence. In other words, that these introductory remarks ignore that rule. Prior to the giving of these instructions the court had instructed the jury as to the burden of proof, that the burden was upon the plaintiff to establish the material allegations of his complaint, which were denied, by a fair preponderance of evidence, and then proceeded to give a fair legal definition of what is meant by preponderance of evidence. We think it unnecessary to introduce each instruction, such as here complained of, by formal words indicating that the special facts referred to must be proven by a preponderance of evidence. Such is clearly to be inferred after the giving of a general instruction by the court upon that subject.

The court instructed the jury, in substance, that if they should find that it was not the customary practice to send up a car when a person was tightening the chain, and that it was dangerous to such person to do so, it was then the duty of Carpenter, if he knew respondent was at work tightening the chain, to see that no car was sent up until Carpenter knew that respondent was no longer in a position of danger. It is contended that there was no evidence upon which this in-

struction could be based. There was evidence of two witnesses, both of whom had worked around the railway for some considerable time and were familiar with the manner of its operation, that they had never known of a car being sent up while a person was tightening the chain. Respondent testified in substance the same. There was no witness who testified to the contrary. It is true there was no direct evidence of a general custom, but we think, in view of the evidence and the apparent dangers of sending a car up while a man was there tightening the chain, this instruction was not erroneous. In other words, the jury might well believe from this evidence and the general situation showing the danger of such a course, that it was the custom and understood by respondent and other employees, that cars were not sent up while the chain was being tightened.

Counsel for appellants have assigned many errors other than those we have discussed. A very large proportion of them are based upon rulings of the trial court to which no exceptions were taken. Other alleged errors were cured by matters occurring at the trial, and the others are so clearly without merit that we do not feel called upon to discuss them. We are of the opinion that the case was fairly tried. We find no error in the record. The judgment is affirmed.

RUDKIN, C. J., MOUNT, DUNBAR, and CROW, JJ., concur.